# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

—oOo—

FILED
AUG 1 2011
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES OF AMERICA

v.

NATHAN GRANADOS

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:11-mj-155-GSA

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about July 23, 2011, in Fresno County, in the Eastern District of California defendant did,

▸ **COUNT 1: Sale of Stolen Government Property**

willfully and knowingly did sell goods and property of the United States, specificallly, at least six (6) German-made fully automatic AK-74 rifles, of a value exceeding $1,000.00, and did aid and abet the same.

**COUNT 2: Possession of a Machinegun**

knowingly receive and possess a machinegun, to wit, a fully automatic German-made AK-74 rifle, and did aid and abet the same.

in violation of Title 18, United States Code, Sections 641 and 922(o), and Section 2. I further state that I am a(n) Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives and that this complaint is based on the following facts:

▸ See Affidavit of Special Agent Justin Quinn, attached hereto and incorporated herein.

X Continued on the attached sheet and made a part hereof.

Signature of Complainant Justin Quinn
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn to before me, and subscribed in my presence

August 1, 2011     at     Fresno, California

Date                                                City and State

GARY S. AUSTIN, U.S. Magistrate Court Judge

Name and Title of Judicial Officer            Signature of Judicial Officer

I.

**INTRODUCTION.**

I, JUSTIN QUINN, being first duly sworn, hereby depose and state:

1. I am a Special Agent of the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I have been so employed since April 2007. In the course of my duties as an ATF Special Agent, I have conducted numerous investigations and received training regarding, but not limited to, the trafficking and possession of firearms by prohibited persons and the illicit distribution and possession of controlled substances by various individuals. As a result of said investigations, I have obtained and executed numerous federal arrest and search warrants. I am currently assigned to the ATF San Francisco Metro Field Office.

2. 18 U.S.C. § 641 provides in relevant part:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; . . .
> Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both. . . .

3. 18 U.S.C. § 922(o) provides in relevant part, ". . . .it shall be unlawful for any person to transfer or possess a machinegun."

4. This affidavit is in support of a complaint charging Nathaniel GRANADOS (hereinafter GRANADOS) with a violation of 18 U.S.C. §§ 641, 922(o), and 2. On or about July 22-23, 2011, GRANADOS assisted John RODRIGUEZ, a Military Police Officer currently

1

stationed at a U.S. Army base in Fort Irwin, California, in selling one or more fully-automatic AK-74 rifles previously stolen from Fort Irwin. The information set forth in this affidavit is not intended to detail each and every fact and circumstance of the investigation or all information known to me and other law enforcement investigators. Rather, this affidavit serves to establish probable cause for the arrest of GRANADOS.

5. On July 15, 2011 numerous firearms were stolen from a U.S. Army Installation at Fort Irwin, California. All of the firearms except one were fully automatic machineguns.

6. On July 26, 2011, members of the Fresno County, California Multi Agency Gang Enforcement Consortium (hereinafter "MAGEC") served a search warrant at 2472 South 10th Street, Fresno, California.

7. Fresno Police Department Officer Joshua Alexander found a fully automatic German-made AK-74 rifle (a "machinegun") in a detached garage in which Moses ZAPIEN resided. On July 18, 2011, this firearm was confirmed as reported stolen by the U.S. Army.

8. Subsequent to the search warrant, ATF Special Agent (SA) Ryan Stearman interviewed ZAPIEN in a video recorded interview. SA Stearman advised ZAPIEN of his Miranda Rights, which ZAPIEN acknowledged that he was familiar with and understood and agreed to speak with SA Stearman. ZAPIEN explained that he is a Bulldog gang member, and that he received the firearm from Vincent HERNANDEZ, aka "Garfield," another Bulldog gang member. ZAPIEN said that Hernandez had obtained the firearm through "Raymond," who is not a Bulldog gang member, but who has a cousin who is a Bulldog gang member and who works on a military base in California. ZAPIEN was shown a photograph of Raymond LORONA, Jr., and identified the individual in

the photograph as being the individual to whom he was referring to as "Raymond." ZAPIEN reported that the gun was given to him in furtherance of the gang, saying that the source of the gun was "putting one back on the street for work for the gang." ZAPIEN said that he had obtained the firearm 4 days prior, but then later said he had obtained the firearm 2 weeks prior. ZAPIEN said that HERNANDEZ recently told him that the gun was "hot" and for him to get rid of it. When asked to explain further, ZAPIEN elaborated that he knew the gun was stolen from a military base. ZAPIEN said the gun did not come with a magazine, but that he and HERNANDEZ obtained two magazines – one that worked and one that did not. ZAPIEN also said that he and HERNANDEZ acquired various caliber ammunition for the gun.

9. ZAPIEN rode along with officers and pointed out 2514 S. 9th Street, Fresno, California as being LORONA's residence. ZAPIEN pointed out 2510 S. 9th Street, Fresno, California as being the residence of individuals related to LORONA. It should be noted that in 2001, LORONA reported his address as 2514 South 9th Street, Fresno, California to Fresno Police Department during a traffic stop. ZAPIEN also said that he knows LORONA to live at the 2514 South 9th Street address.

10. Agents obtained information from U.S. Army records indicating that John RODRIGUEZ is a Military Police Officer at Fort Irwin. RODRIGUEZ listed his emergency contact information for his mother, wife, and child as 2514 South 9th Street, Fresno, California, the same address as that established for LORONA. Additionally, RODRIGUEZ's OPM SF86 Security Clearance Application lists Raymond LORONA at 2514 South 9th Street, Fresno, California as a "Person Who

3

1  Knows You." RODRIGUEZ also listed his mother's maiden name as
2  LORONA. RODRIGUEZ was formerly known to be a Bulldog gang member.
3  In March, 2011, U.S. Army Criminal Investigation Division Special
4  Agent Steve Nieves spoke to RODRIGUEZ, who advised SA Nieves that he
5  was a former Bulldog gang member out of Fresno, California.

6     11.   On July 27, 2011, ATF agents executed a federal search
7  warrant at 2514 S. 9th Street, Fresno, California. During the search,
8  LORONA arrived at the residence and willingly spoke with agents.
9  When asked about an assault rifle and collapsible baton located
10 during the search, LORONA advised agents that those were his
11 possessions and that he knew the possession of such was in violation
12 of the California Penal Code. LORONA was subsequently arrested for
13 said violations and interviewed by SA Stearman and ATF Task Force
14 Officer (TFO) Christopher Friedmann. This interview was video
15 recorded. Prior to the interview, SA Stearman advised LORONA of his
16 rights pursuant to Miranda and he stated that he understood the
17 rights as they were read and that he was willing to talk to law
18 enforcement. LORONA stated that he knew RODRIGUEZ had stolen the
19 rifles from a military base. After the rifles were stolen, LORONA
20 observed RODRIGUEZ with an individual LORONA only knew as "Nate."

21    12.   On July 28, 2011, agents identified Nathaniel GRANADOS as
22 the individual LORONA was likely referring to during his interview.
23 SA Stearman and I located GRANADOS and asked him if he would travel
24 to the Clovis Police Department to speak with us. GRANADOS obliged
25 and followed us in his own vehicle to the Clovis Police Department.
26 Prior to the interview, agents explained to GRANADOS he was free to
27 leave at any time and thanked him for coming in to speak with us.
28 During the interview, GRANADOS never requested to leave or have a

lawyer present. GRANADOS stated that RODRIGUEZ was a close friend and that they had known each other for several years. GRANADOS explained that RODRIGUEZ, accompanied by another U.S. Army military police officer, Harvey DELVALLE, traveled to GRANADOS'S residence immediately following the theft of the machineguns. GRANADOS stated that he knew the weapons were stolen based on statements made by RODRIGUEZ. GRANADOS stated that upon RODRIGUEZ' arrival at his residence, RODRIGUEZ and DELVALLE were conducting multiple conversations on RODRIGUEZ' cellular telephone in what appeared to GRANADOS as an attempt to locate buyers. GRANADOS stated that approximately a week after the theft of the rifles, GRANADOS accompanied RODRIGUEZ to sell approximately six (6) of the machineguns to three suspected gang members in Fresno, California. GRANADOS stated that the buyers of the firearms arrived in a white BMW sport-utility vehicle and that RODRIGUEZ provided the occupant(s) of the BMW a duffel bag containing the guns for more than $1000.00 in U.S. currency. GRANADOS stated that this transaction occurred on or about July 23, 2011 at approximately 12:00AM in Fresno, California.

15. On July 30, 2011, GRANADOS was arrested by ATF agents for his involvement in assisting RODRIGUEZ in the sale of the stolen firearms. Subsequent to being advised of his rights pursuant to Miranda and knowingly and voluntarily waiving those rights, GRANADOS informed agents that prior to accompanying RODRIGUEZ to the firearms transaction with the three suspected gang members, he had gone with RODRIGUEZ to a tattoo shop in Fresno, California earlier that day. Once there, he and GRANADOS went into a back room of the tattoo shop and met with the three suspected gang members. RODRIGUEZ had brought one machinegun into the tattoo shop contained inside a brown bag.

1  While there, GRANADOS observed RODRIGUEZ display the machinegun and
2  negotiate the sale of multiple machineguns with one of the suspected
3  gang members. GRANADOS and RODRIGUEZ then left the tattoo shop.
4  Later that same night, GRANADOS and RODRIGUEZ met with the three
5  suspected gang members in Fresno, California. RODRIGUEZ and one of
6  the suspected gang members continued to negotiate a price for the
7  machineguns. After reaching an agreement on the price for six (6)
8  machine guns, both GRANADOS and RODRIGUEZ and the three suspected
9  gang members traveled to 2510 S 9th Street in Fresno, California where
10 RODRIGUEZ had kept some, if not all of the machineguns.

11     16.  Once at the residence, GRANADOS and RODRIGUEZ entered the
12 backyard where RODRIGUEZ opened the door that led to a cellar
13 underneath the residence. GRANADOS held the door while RODRIGUEZ
14 retrieved a bag that GRANADOS believed contained the machineguns.
15 Both GRANADOS and RODRIGUEZ then returned to the front of the
16 residence where RODRIGUEZ exchanged the machineguns for approximately
17 $1,400.00 from the suspected gang members. RODRIGUEZ then asked
18 GRANADOS to count the money and GRANADOS confirmed that it was
19 $1,400.00. Shortly thereafter, the firearms transaction was
20 concluded. GRANADOS described this residence as next door to the
21 residence where ATF agents had previously served a Federal search
22 warrant and identified the residence as belonging to RODRIGUEZ'S
23 cousin, "Nicky," and her boyfriend, "Mike." GRANADOS stated that he
24 had not been entirely truthful during his previous interview because
25 he was concerned about his safety and the safety of his family.
26 //
27 //
28 //

1  //

2      18.  I declare under penalty of perjury that the statements
3  above are true and correct to the best of my knowledge and belief.

                                    _____
                                    Special Agent Justin Quinn
                                    United States Department of Justice
                                    Bureau of Alcohol, Tobacco,
                                    Firearms & Explosives

10  Sworn and subscribed to before me
    August ____1____, 2011
11
12  _____
    Honorable Gary S. Austin
13  United States Magistrate Judge
    Eastern
14  District of California